USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-20-09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JESSE PERRY,

                  Plaintiff,                08 Civ. 4610 (PKC)

      -against-

                                   MEMORANDUM AND ORDER

STATE OF NEW YORK DEPARTMENT OF
LABOR,

                  Defendant.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

      The plaintiff, who is pro se, asserts that the New York State Department of Labor ("DOL") discriminated and retaliated against him by declining to grant him an interview for a position as Labor Standards Investigator. He brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621, et seq. The defendant moves to dismiss the amended complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.

      For the reasons explained below, the motion to dismiss is granted.

BACKGROUND

      In an action commenced in 2002, he brought Title VII claims of race discrimination and retaliation against the DOL, resulting in a jury verdict in the DOL's favor. Perry v. State of New York Dep't of Labor, et al., 02 Civ. 7566 (LBS) (S.D.N.Y. Apr. 26, 2006). The Second Circuit affirmed the verdict. See 06-3087 (2d Cir. May 1, 2007).

The present action arises out of the plaintiff's efforts in 2006 to apply for a position with the DOL, which he first learned about when he received a mass-mailed canvass letter. According to the plaintiff, the canvass letter was dated January 17, 2006 and stated that the plaintiff was eligible to interview for a vacant position as a labor standards investigator. (Am. Compl. at 120-21.) In boldface type, the letter states, "This is not an offer of employment. Do not leave your present job." (Am. Compl. at 120.) The plaintiff checked a box to indicate his interest in the position, signed the letter and dated it January 24, 2006. (Am. Compl. at 120.) According to the plaintiff, on January 26, 2006, he telephoned to arrange an interview and was told by an administrative assistant that "the position is no longer available. The person who resigned from the position is no longer going to resign." (Am. Compl. at 10.) The plaintiff asserts that he later traveled to DOL offices in New York, NY at the letter's designated interview time, and learned that interviews for the position were proceeding despite the prior assertion to the contrary. (Am. Compl. at 10-11.)

In or about December 2006, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the DOL failed to interview him due to his race, color and age. (Am. Compl. at 7.) The DOL responded with a 22-page answer, which is annexed to the Complaint. (Am. Compl. at 31-49.) The DOL response to the EEOC included affidavits, which are annexed to the Amended Complaint, asserting that the individual who tendered resignation had rescinded the decision and remained in the position, so that the position ultimately was not vacated.[1] (Am. Compl. at 50-55.) On or about June 25, 2007, the EEOC dismissed the charge and

---

[1] As part of their motion to dismiss, the DOL strongly contests whether the position was even open, but at the Rule 12 stage, I assume the truth of the plaintiff's allegation that the DOL was interviewing for the post.

issued a right-to-sue letter. (Am. Compl. at 14.)

This action was commenced on or about September 27, 2007. In an order dated May 19, 2008, then-Chief Judge Wood dismissed the action sua sponte, concluding that the complaint failed to conform with the minimal requirements of Rule 8, Fed. R. Civ. P. The order noted, among other things, that only "a very small portion" of an approximately 150-page complaint set forth assertions in support of a retaliation claim, and that the plaintiff had set forth no allegations of race discrimination in support of a new lawsuit distinct from the claims that were heard in the 2006 jury trial. (Order at 6.) The order granted plaintiff leave to file an amended complaint to cure any pleading defects. (Order at 8-9.)

Plaintiff then filed the Amended Complaint on September 19, 2008. Including exhibits, it is 131 pages in length, and purports to set forth claims under the ADEA and Title VII arising out of the DOL's failure to interview him for the position of labor standard investigator. (Am. Compl. at 1, 5.) According to the plaintiff, the DOL refused to interview him for the position due to his age and race, and retaliated against him for his participation in protected activities. (Am. Compl. at 5-12.)

MOTION TO DISMISS STANDARD

A pro se complaint is reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

Rule 8(a)(2), Fed. R. Civ. P., requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quotation omitted) (alteration in original); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When a defendant tests the sufficiency of a complaint through a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S.Ct. at 1965) (footnote omitted). This "does not require heightened fact pleading of specifics, [but] it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974) (footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citations omitted). When a complaint's allegations are "merely consistent" with liability, it falls short of alleging a plausible claim for relief. Id. A complaint's legal conclusions are not afforded a presumption of truth. Id. at 1949-50.

DISCUSSION

        I.      The Complaint Fails to State a Claim of Discrimination Based on Race or Age.

A plaintiff is not required to come forth at the pleading stage with allegations sufficient to make a prima facie case of employment discrimination or to satisfy the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 US. 792 (1973). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (McDonnell Douglas sets forth an evidentiary standard, as opposed to a pleading standard). A complaint must nevertheless allege the essential elements of an employment discrimination claim, including discrimination on the basis of protected status. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). A plaintiff is required to set forth factual circumstances from which discriminatory motivation can be inferred. Id. Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus. Id. In the absence of such allegations, dismissal at the pleading stage is warranted. Id. at 112-13.

Similarly, the ADEA requires a plaintiff to allege discriminatory conduct that is based on the age of the defendant. The text of the statute makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.' That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (alteration in original) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

The Amended Complaint fails to set forth allegations of discrimination sufficient to make plaintiff's discrimination action "plausible on its face." Patane, 508 F.3d at 111-12 (quoting Twombly, 127 S. Ct. at 1974). To the limited extent that the Amended Complaint asserts discrimination, it does so only in a conclusory fashion. See Am. Compl. at 5 ("... I was denied an interview based upon discriminatory bias."); 7 ("As a 48 year old African-American male I allege that the [DOL] discriminated against me in violation of Title VII and the [ADEA] . . . ."); 9-10 (citing statistics concerning minority composition of New York state public workforce). Such assertions constitute the type of "labels and conclusions" or the "formulaic recitation of the elements of a cause of action" deemed by Twombly as insufficient to state a claim for relief. 127 S. Ct. at 1964-65. The complaint is otherwise silent as to any discriminatory purpose or motivation directed toward the plaintiff.

I am mindful that the pleading requirements in a Title VII action are "very lenient, even de minimis," Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998), and that as a party representing himself pro se, the plaintiff's complaint is to be read liberally. Graham, 89 F.3d at 79. The special solicitude afforded to a pro se litigant does not relieve the plaintiff of his obligations under Rule 8, however. In her order of May 19, 2008, Chief Judge Wood walked through the flaws in the plaintiff's initial complaint and afforded him leave to replead in order to cure those deficiencies. Among other things, the order noted that the plaintiff failed to state any facts supporting new claims of race discrimination, as opposed to assertions more relevant to the 2006 jury

trial. (Order at 6.) It noted that the plaintiff "allege[d] no facts whatsoever relating to age discrimination." (Order at 6.) Chief Judge Wood directed the plaintiff to file an amended complaint "setting forth facts upon which a court could conclude that the defendant discriminated against him based on his race, color or age, and retaliated against him for his opposition to defendant's alleged unlawful practices. . . . Plaintiff must identify his own race, color or age, and that of co-workers or supervisors involved in the alleged incidents." (Order at 8.) The order directed the plaintiff to provide a more detailed account of the acts of discrimination and retaliation he alleges to have experienced, including the persons involved, relevant dates, the nature of the allegedly wrongful behavior and any other relevant facts, as well as an explanation as to how he exhausted his administrative remedies. (Order at 9.)

While the Amended Complaint has added further details relating to the purported DOL job opening, and has set forth a record as to administrative exhaustion, it does not sufficiently allege a claim of discrimination. The plaintiff alleges that on January 26, 2006, he called the DOL and spoke with Sharon Burnette concerning his interest in the canvass letter and the DOL's job opening. (Am. Compl. at 10.) She responded, "[O]h I just received your canvass letter, I was told to tell you that the position is no longer available. The person who resigned from the position is no longer going to resign." (Am. Compl. at 10.) The plaintiff alleges that on February 15, 2006, he arrived at the DOL office at 345 Hudson Street, New York, NY, and went to the sixth floor. (Am. Compl. at 10.) He spoke to an individual identified as Investigator Hammond and asked whether interviews were taking place that day. (Am. Compl. at 10.) Hammond confirmed that they were and reviewed the plaintiff's canvass letter. (Am.

Compl. at 10.) Thereafter, Sharon Burnette came out to speak with the plaintiff, asked whether he was there to drop off the canvass letter, and indicated that he was supposed to call in order to schedule an interview appointment. (Am. Compl. at 11.) She offered to take a copy of the letter and to time- and date-stamp the letter. (Am. Compl. at 11.)

These allegations, while containing detailed accounts of dates, locations and individuals, do not support a claim of discrimination motivated by race or age. No allegation indicates discriminatory animus or treatment by the plaintiff that differed from other similarly situated individuals. Chief Judge Wood's order explained the need to incorporate such allegations, which must be set forth in order to plead a Title VII claim. Patane, 508 F.3d at 112. Because the plaintiff has failed to set forth any allegations that raise a possible inference of discriminatory motivation, his claims of discrimination based on age and race are dismissed.

## II.   The Complaint Fails to State a Claim of Retaliation.

Both Title VII and the ADEA make it unlawful to retaliate against an employee who has engaged in protected activity. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115 (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)); Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997) ("We approach [plaintiff's] age-based retaliatory discharge claim in the same way as retaliation claims under Title VII . . . ."). "Generally, the

Case 1:08-cv-04610-PKC-KNF   Document 20   Filed 08/20/09   Page 9 of 12

- 9 -

ADEA, like Title VII, protects individuals from actions injurious to current employment or the ability to secure future employment." Id. at 466 (emphasis in original).

The plaintiff asserts that his personnel records indicate a pattern and practice of retaliation. (Am. Compl. at 5.) Yet it is unclear what he intends to claim as an adverse action: the failure to interview him, or negative comments placed in his personnel record while an employee of the DOL in 2001. (Am. Compl. at 2, 5-7.) Plaintiff also contends that his personnel records were tampered by the DOL "in direct proportion to each attempt that I have made," and cites to a 2001 incident in which he complained about being assaulted by a DOL manager. (Opp. Mem. at 23.) The Amended Complaint is similarly unclear as to what actions constitute a protected activity. He asserts that he has been retaliated against due to his participation in investigations by the DOL's Office of the Inspector General and its discrimination unit. (Am. Compl. at 5.) His submissions might also be read as asserting that the plaintiff was being retaliated against because of his lawsuit against the DOL, or perhaps because of the unproductive course of settlement negotiations in his prior litigation with the DOL. (Opp. Mem. at 20-22.)

The plaintiff's opposition papers on the present motion do not clarify his position. The plaintiff asserts that on February 3, 2006, he called the chambers of Magistrate Judge Peck and communicated certain "concerns" to a secretary about his discussions with opposing counsel. (Opp. Mem. at 20-22.) That afternoon, he spoke to opposing counsel in his then-pending litigation, who stated that it was the DOL's position that it had done nothing wrong. (Opp. Mem. at 21.) The plaintiff and the DOL discussed settlement issues, but it appeared that the parties were at an impasse. (Opp. Mem. at 21.)

Case 1:08-cv-04610-PKC-KNF   Document 20   Filed 08/20/09   Page 10 of 12

- 10 -

On February 15, 2006, the plaintiff visited the DOL's offices on Hudson Street, where, he claims, he was told that interviews for the inspector's position were proceeding. (Opp. Mem. at 21.) He indicates that the decision not to interview him was an act of retaliation. (Am. Compl. at 2; Opp. Mem. at 21.) Plaintiff further asserts that certain records pertaining to his previous employment with the DOL had been shredded, including a June 22, 2001 document with the notation "wnr," which the plaintiff indicates stood for "would not re-hire." (Opp. Mem. at 21.)

The plaintiff has not set forth a cognizable retaliation claim. As Chief Judge Wood noted in the order, a complaint fails to satisfy Rule 8 if it is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). Generously construing the Amended Complaint and plaintiff's opposition materials, it appears that the plaintiff's strongest claim for retaliation would be that, in retaliation for maintaining his 2002 litigation against the DOL, the DOL refused to permit plaintiff to participate in interviews for a position of labor standards investigator. An employer's decision to "blacklist" a former employee may be an adverse action for the purposes of stating a retaliation claim. Wanamaker, 108 F.3d at 466.

Construing the Amended Complaint as making this assertion, the causal connection between the protected activity (commencement of a 2002 lawsuit) and the alleged act of retaliation (refusal to interview the plaintiff for a job position of which he was notified) is remote. A plaintiff may assert causal connection through allegations of retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action. See, e.g., Summer v. U.S. Postal

Service, 899 F.2d 203, 209 (2d Cir. 2009). The Amended Complaint does neither: It contains no allegation of direct retaliatory animus, and as to circumstantial evidence, a gap of more than one year between protected activity and retaliatory action is generally insufficient. See, e.g., Myrick v. New York City Employees Retirement System, 2002 WL 868469, at *7 (S.D.N.Y. May 3, 2002) (Lynch, J.) (temporal proximity may support an inference of causation at the Rule 12 stage), aff'd, 56 Fed. Appx. 70 (2d Cir.), cert. denied, 540 U.S. 912 (2003); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (retaliation claims "routinely dismissed" when as few as three months lapse between the protected activity and retaliatory conduct); Castro v. Local 1199 Nat'l Health & Human Services Employees Union, 964 F. Supp. 719, 729 (S.D.N.Y. 1997) (a one-year time gap is too long to support an inference of causal connection).

Moreover, the Amended Complaint contains no allegation that the decision makers responsible for filling the position of labor standards investigator were aware that the plaintiff had filed a lawsuit against the DOL or aware of any activities cited in the Amended Complaint that may be construed as allegedly protected.

The plaintiff's retaliation claim is dismissed.

III. Dismissal With Prejudice is Warranted.

A plaintiff who is granted leave to cure pleading deficiencies but fails to do so can be subject to dismissal without leave to replead. Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1978); Ellis v. Guarino, 2004 WL 1879834, at *13-14 (S.D.N.Y. Aug. 24, 2004).

Chief Judge Wood's order carefully walked through the plaintiff's initial

complaint, identified the flaws and omissions contained therein, and set forth specific issues to be repleaded in an amended filing. While the plaintiff did come forth with additional details as to the dates and locations of certain incidents and the identities of certain individuals, the Amended Complaint did not, as noted, address several key points raised in Chief Judge Wood's order. Dismissal with prejudice is warranted in this case.

CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is directed to enter judgment in favor of the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 19 2009